IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DERRICK TOOMER,         *

    Plaintiff         *

    v.         *         Civil Action No. DKC-18-3048

WEXFORD HEALTH CARE, INC.,         *

    Defendant         *

***

# MEMORANDUM OPINION

In response to this court's Order to Show Cause, counsel for the Division of Corrections filed a response indicating that Plaintiff, an inmate at Roxbury Correctional Institution (RCI), is not entitled to a preliminary injunction because his medical needs are being addressed. ECF No. 4.[1] After seeking an extension of time, which was granted, Plaintiff filed a response. ECF No. 8. For the reasons that follow, Plaintiff's request for preliminary injunctive relief will be denied and this case closed.

In his unverified complaint solely seeking injunctive relief, Plaintiff alleged that in 2010 he was stabbed multiple times in his right forearm and hand resulting in his undergoing surgery at Union Memorial Hospital. ECF No. 1, p. 1. After his discharge, he was directed to return in 7-10 days to begin rehabilitation of his injury but Wexford Health Source, Inc. refused to pay for the rehabilitation at Union Memorial Hospital and Plaintiff did not receive rehabilitation for 18 months resulting in his hand "heal[ing] wrong" and partial paralysis.[2] *Id.*, p. 2.

---

[1] Defendant's counsel filed a duplicate response to the Order to Show Cause on October 22, 2019, attaching Plaintiff's medical records with his birth date redacted. ECF No. 5.

[2] Plaintiff has previously litigated his complaints regarding the medical care provided to him for his forearm injury. *See Toomer v. Wexford*, Civil Action No. DKC-12-0083. Those issues are not currently before the court.

Plaintiff states that he was prescribed Neurontin for over 7 years and that, on an unspecified date, Wexford Health Care, Inc. stopped the Neurontin and gave him Cymbalta instead. ECF No. 1, p. 2. He claims that Cymbalta caused him to suffer nightmares of such intensity that he awoke punching the wall in a fight with an imaginary foe. *Id*. He states that Cymbalta was "[n]ot a[n] ideal medication to give [him] especially after being diagnosed with P.T.S.D. by 4 different board certified psychiatrist[s and it was also n]ot a good idea to stop [his] psychological medication, 'Prozac' to give [him] Elavil to replace [his] pain medication Neurontin." *Id*., p. 2. Plaintiff explains that he lives with horrible pain and suffers from the sensation of crawling up and down his forearm. *Id*. Plaintiff denies being an opioid or heroin addict. *Id*., pp. 2, 4.

Additionally, Plaintiff states that on May 15, 2013, he passed out during outside recreation. ECF No. 1, p. 3. The following morning he noticed his entire foot was black. An x-ray was taken and a hair-line fracture discovered on his left foot. Dr. Joubert saw Plaintiff on May 19, 2013, and put his foot in a half-cast, half-splint and advised Plaintiff that he needed to see a doctor, but he did not see a doctor until July 19, 2013. *Id*. Plaintiff states that he has a metal rod in his fibula and a metal plate over his ankle.[3] ECF No. 1, p. 3. He states that he suffers from deep pain and the inside of his bones ache. *Id*.

Plaintiff states that he is not getting any pain relief and that the pain he is suffering from is affecting his eating, sleeping, and mental health.[4] ECF No. 1, p. 6. He indicates that he was scheduled to see a pain management team but that it did not happen. *Id*.

---

[3] The medical care Plaintiff received for his foot injury was previously ligated by him in *Toomer v. Wexford*, Civil Action No. DKC-13-3072, and will not be considered in the context of this case.

[4] Plaintiff also complains that his previous cases have been assigned to the undersigned and that the decisions in those cases have been adverse to him. He reiterates that he "just want[s] to

As relief, Plaintiff seeks: 1) consultation with the pain management team; 2) to be provided pain medication; 3) disclosure of "the rule that allowed, whomever to stop all of my medication, who what, when, and why, why, why?" and 4) determination of whether the pharmacist is licensed. ECF No. 1, p. 6.

In response, counsel provides 105 pages of Plaintiff's medical records (ECF 4-1) and the affidavit of Erwin Aldana, M.D. ECF No. 4-2. The exhibits demonstrate that Plaintiff is a chronic care patient who is regularly evaluated by physicians and other health care providers in order to manage his chronic medical conditions which include diabetes mellitus, hypertension, obesity, and chronic pain syndrome related to his 2010 right forearm surgery and 2013 left ankle fracture and ligament tear. ECF No. 4-2, ¶¶4, 5.

Dr. Aldana explains in his affidavit that pain management for chronic pain is individualized and as such the cause and type of the pain must be determined in order that the most appropriate treatment can be selected. ECF No. 4-2, ¶ 6. Plaintiff suffers from both neuropathic (often caused by "nerve damage or a malfunctioning nervous system") and musculoskeletal pain ("often caused by injury to the bones, joints muscles, tendons, ligaments, or nerves" or by overuse). *Id*., ¶¶6, 7.

---

be heard and then have [his]day in court." ECF No. 1, p. 4. To the extent Plaintiff's comments can be construed as a request to recuse, his request is denied.

Pursuant to 28 U.S.C. § 144, recusal can be considered whenever a party to any proceeding files a sufficient affidavit stating that the judge before whom a case is assigned has a personal bias or prejudice either against that party or in favor of another party. A motion for recusal must also be accompanied by a certificate that the motion is made in good faith. Another section of the code, 28 U.S.C. § 455, requires a federal judge to recuse herself "in any proceeding in which h[er] impartiality might reasonably be questioned." Any alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from h[er] participation in the case." *Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir. 1984) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Due process may sometimes demand recusal even when a judge has no actual bias if, for instance, "the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable." *See Rippo v. Baker*, _ U.S. _, 137 S.Ct. 905. 906 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The request does not present a cognizable basis for recusal and will be denied.

In light of the age of Plaintiff's injuries and the chronic nature of his complaints, Dr. Aldana opines that it is likely Plaintiff will suffer life-long pain. Therefore, the goal of his pain management plan is to manage the pain in order to "prevent interference with physical function including Plaintiff's regular activities of daily living." *Id.*, ¶ 7.

In order to manage Plaintiff's pain he has been prescribed a number of different "pain medications including non-steroidal anti-inflammatory medications, non-opioid analgesics, opioid analgesics, and anti-neuropathic pain medications (anti-depressants and anti-epileptic medications). ECF No. 4-2, ¶ 8.

Dr. Aldena explains that the Department of Public Safety and Correctional Services' State Medical Director has identified Neurontin/Gabapentin (approved by the FDA as an anticonvulsant for seizure conditions and to treat neuropathic pain caused by herpes virus or shingles) and Tramadol/Ultram (a synthetic opioid) "as medications with patterns of over use and abuse." ECF No. 4-2, ¶¶ 9, 10. The patterns of abuse include hoarding of these medications by inmates for improper use due to their narcotic, euphoric, and sedative like effect, or for trade to other inmates for misuse in exchange for secondary benefits. *Id.* To address these issues with regard to Neurontin, DPSCS has sought to eliminate its use for non-FDA approved conditions barring exceptional circumstances. *Id.*, ¶ 10. Neurontin is not FDA approved for any of Plaintiff's diagnosed conditions. *Id.*

On October 25, 2017, Plaintiff was seen in the chronic care clinic where he reported that he was doing well "except for pain." ECF No. 4-1, p. 1. At that time Plaintiff was prescribed Tylenol Extra Strength (ES), Tramadol, and Neurontin. *Id.*, p. 2. The doctor recommended switching Plaintiff from Neurontin to amitriptyline (Elavil) and a new prescription was entered with Plaintiff's prescriptions for Tramadol and Tylenol ES continued. *Id.*, p. 2.

On December 15, 2017, Plaintiff was seen for a regular appointment in the chronic care clinic. He reported chronic pain in his left foot. ECF 4-1, p. 6. His pain medications were reviewed, his prescription for amitriptyline discontinued, and Cymbalta prescribed. *Id*., p. 8. Plaintiff's prescriptions for Tramadol and Tylenol ES were continued. *Id*. Thereafter, Plaintiff underwent an EKG to assess his cardiac function before continuing with amitriptyline. *Id*., pp. 12, 14. On January 8, 2018, the results of the EKG were reviewed. They were abnormal but Plaintiff was asymptomatic. *Id*., p. 14. His prescriptions for Extra Strength Tylenol, Cymbalta, and Tramadol for pain management were continued. Plaintiff did not complain at that time of ineffective pain control or of any negative side effects from Cymbalta. *Id*.

On February 13, 2018, Plaintiff was seen for follow up regarding his diabetic condition. It was noted that the EKG had been abnormal but that the abnormal reading was likely due to the leads being placed on his leg improperly. ECF 4-1, p. 15. Another EKG was ordered with directives to avoid placing the lead on his leg with the metal implant. Plaintiff's prescription for amitriptyline was reordered and the prescription for Cymbalta was allowed to expire. *Id*., p. 16.

Plaintiff was evaluated by nursing staff on February 20, 2018, March 2, 2018, and March 12, 2018. ECF No. 4-1, pp. 18-20. He did not complain of poor pain control on either occasion. *Id*.

On March 15, 2018, Plaintiff's prescription for Tylenol ES was renewed. ECF 4-1, p. 22.

He was seen by a physician on April 12, 2018, for follow-up regarding his diabetic condition. He did not appear in distress and he did not offer any complaints regarding ineffective pain management. *Id*., pp. 24-25. His pain management regimen which included Tylenol ES, amitriptyline, and Tramadol, was continued. *Id*., p. 25.

In response to a sick call slip, Plaintiff was seen by mental health staff on April 17, 2018. ECF No. 4-1, p. 26. Plaintiff complained that his prescription for Prozac had been discontinued and he had been placed on amitriptyline (Elavil). He also complained that his prescription for Neurontin had been discontinued. He reported that Cymbalta caused him vivid nightmares. *Id.* Dr. Aldara avers that vivid nightmares are not a commonly identified side effect of Cymbalta. ECF No. 4-2, ¶ 18. Plaintiff did report that he was sleeping better with the medication changes but advised that he "still liv[ed] in pain." ECF No. 4-1, p. 26. He requested that the mental health nurse ask the physician to increase his dose of Elavil. *Id*. The nurse noted that Plaintiff was not in any distress and that she would speak with medical staff regarding his pain management plan. *Id*. She further advised Plaintiff that if he needed to see the psychiatrist regarding his mental health medication he should submit a sick call slip. *Id*.

Plaintiff was seen on May 11, 2018, by a physician for a follow-up regarding his diabetes. ECF No. 4-1, pp. 27-28. Plaintiff did not voice any concerns about ineffective pain control and his prescriptions for amitriptyline, Tylenol ES, and Tramadol were continued. *Id*.

Plaintiff was seen on May 16, 2018, by a nurse practitioner for psychiatric follow-up. ECF No. 4-1, p. 31. He advised that he had been doing well since being taken off of Prozac and being placed on amitriptyline for pain and anxiety relief. *Id*.

Plaintiff was evaluated by a physician during his chronic care follow-up on June 11, 2018. ECF No. 4-1, p. 54. Plaintiff reported chronic pain in his right arm and left ankle and that being flat footed worsened the foot pain. *Id*. Plaintiff also advised the doctor that Tramadol did not provide long lasting relief and requested his dosage be increased to twice daily. Plaintiff explained that he had been prescribed Neurontin in the past, which he found helpful, and that Cymbalta gave him nightmares. *Id*. Examination demonstrated that Plaintiff suffered from moderate pain with

motion of both his hand and foot. *Id.*, p. 55. He was advised that a request to increase Tramadol would be made and that Plaintiff would be approved to purchase insole arches for his shoes.[5] *Id.*, p. 54. The physician also discussed with Plaintiff that Tegretol could be considered as an additional pain management prescription if necessary. *Id.* The request for Tramadol was approved, however, the treating physician was advised that Tramadol was not indicated for long term pain management and alternative pain medication should be considered at Plaintiff's next chronic care visit. *Id.*, p. 58.

Plaintiff was seen on July 18, 2018, by a nurse regarding his complaint that his prescription for Tramadol had expired. ECF 4-1, p. 59. Plaintiff had active prescriptions for Tylenol ES and amitriptyline. *Id.* He appeared in no distress and was referred to a provider regarding his medication needs. *Id.*

Plaintiff was evaluated on August 2, 2018, for his diabetic condition. He appeared in no distress and did not complain of ineffective pain management. ECF No. 4-1, p. 61.

Plaintiff was seen on September 1, 2018, by a nurse in response to a sick call slip complaining of pain. ECF No. 4-1, p. 62. Plaintiff reported constant pain in his left foot which increased when walking. He also reported that amitriptyline was causing drowsiness. *Id.* He was told that he would be referred to a provider. *Id.*

On September 10, 2018, during his chronic care clinic follow up, Plaintiff again complained of chronic pain. ECF No. 4-1, p. 64. Examination demonstrated moderate pain with motion in his left leg and right forearm. Plaintiff was advised that it had previously been recommended that he be tapered off of Tramadol and begin alternate pain management as Tramadol was not appropriate for long term use. *Id.* Plaintiff was also told that he would be

---

[5] Plaintiff received the arch insoles on September 25, 2018. ECF No. 4-2, p. 102.

7

weaned from Tramadol and referred to a pain management committee. *Id*. At that time Plaintiff was prescribed 75 mg of amitriptyline and was counselled that it was not advisable to increase the dose of amitriptyline because of the risks of its interactions with Tramadol as well as the possibility of "Serotonin Sydrome." *Id*. The physician further advised Plaintiff that once he was weaned from Tramadol that optimizing amitriptyline would be considered or the use of Tegretol. *Id*. Plaintiff was upset by the plan but indicated his understanding. *Id*. The following day, a non-formulary taper dose prescription of Tramadol was approved. *Id*., p. 70.

Plaintiff submitted a sick call slip on September 17, 2018, complaining that he had been referred to the pain management team but had not yet been seen and was threatening to file a civil rights claim that day. ECF No. 4-1, p. 71. Plaintiff was seen by a nurse on September 20, 2018. *Id*., p. 72. Mild swelling in Plaintiff's left ankle was observed and he was referred to a provider. *Id*. Plaintiff received a tapering dose of Tramadol through September 30, 2018. *Id*., p. 74-76. Additionally, at the time of his sick call encounter on the 20th, he continued to receive Tylenol ES and amitriptyline. *Id*., p. 72.

On September 24, 2018, Plaintiff was seen by a mental health provider due to his request for medication for his anxiety. ECF No. 4-1, p. 77. During the exam, Plaintiff was argumentative and requested medications which were determined to be "not necessarily clinically indicated." *Id*. Plaintiff was described as being able to attend to his activities of daily living and was in no acute distress. *Id*. He agreed to try Zoloft. *Id*.

Plaintiff was seen by a nurse practitioner on October 15, 2018, due to his complaint regarding his pain medication. ECF No. 4-1, p. 104. Plaintiff was angry and demanded that he be provided Tramadol as it was the only thing that controlled his pain. *Id*. Plaintiff stated that he would not try Tegretol but would take his case to court to secure the Tramadol. *Id*. Plaintiff was

advised that he would be scheduled to be seen by the pain management team. His prescriptions for amitriptyline and Tylenol ES remained in effect. *Id*., p. 105.

Dr. Aldana states that in his opinion, Plaintiff has received appropriate pain management. ECF No. 4-2, ¶ 30. Despite Plaintiff's claim that he has been removed from all pain medications, Dr. Aldana avers that Plaintiff in fact continues to receive amitriptyline and Tylenol ES. *Id*. Dr. Aldana also explains that while Plaintiff complains that he suffers from breakthrough pain under his current pain regimen, he also suffered from break through pain when receiving his preferred medication of Neurontin and Tramadol. ECF No. 4-2, ¶ 31. Despite these complaints of break through pain, Plaintiff has not expressed that his pain has prevented him from completing activities of daily living and his frequent medical assessments reflect that he was in fact able to perform activities of daily living. .

Lastly, Dr. Aldana avers that Plaintiff was scheduled to be seen by pain management services. ECF No. 4-2, ¶ 32. The goal of the assessment will be to improve Plaintiff's pain medication regimen by introducing new pain medication and by considering other treatment modalities. While awaiting that evaluation, Plaintiff will continue to be seen in the chronic care clinic and has immediate access to medical personnel via the sick call procedure.[6] *Id*.

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren,* 553 U.S. 674, 689-90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res.*

---

[6] In his response, Plaintiff indicates that more recently he was also prescribed Depakote for pain management. ECF 8.

*Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

Indeed, the record, viewed most favorably to Plaintiff, does not demonstrate that he is likely to suffer irreparable harm in the absence of preliminary injunction as he does not appear to have suffered unnecessary pain as a result of the changes in his prescribed medications. Rather, according to his medical records and his own filings, Plaintiff continues to receive other pain medication such as Tylenol ES, amitriptyline, and Depakote, enabling him to perform activities of daily living.

Moreover, Plaintiff has failed to establish a likelihood of success on the merits. Subjectively, the change in prescriptions did not amount to an act or omission "for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). It does not appear that Plaintiff's medical providers have exhibited a callous disregard for a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Over a period of a year, from October, 2017 to October, 2018, Plaintiff was seen in the medical unit at least 20 times for chronic care appointments, sick call visits, mental health assessments, and an EKG. According to Dr. Aldana alternative medication was offered to Plaintiff because Neurontin is FDA-approved as an anticonvulsant for seizure conditions and treatment of neuropathic pain caused by herpes

virus or shingles, neither of which Plaintiff has. Similarly, Plaintiff's Tramadol prescription was tapered and ultimately discontinued because of its contraindication for long term use. Plaintiff was provided an alternative analgesic pain medication and referred for pain management. On these facts, viewed most favorably to Plaintiff, he cannot demonstrate that the changes in his prescriptions were the product of a callous disregard for a serious medical need. The request for injunctive relief is denied.

The procedural posture of this case is that Plaintiff solely requested injunctive relief. ECF No. 1. In his response, Plaintiff indicates that he would await the court's response to his request for injunctive relief "prior to filing his civil action." ECF No. 8, p. 5. Given that the denial of Plaintiff's request for injunctive relief resolves the matters currently before the court, the Clerk will be directed to close this case.[7] A separate Order follows.

June 5, 2019

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[7] Plaintiff is free to file a civil rights complaint regarding his pain management, naming the appropriate Defendants and setting forth his specific factual claims. He is cautioned, however, that he may not relitigate the issue concerning the treatment he received for the injuries to his forearm and leg that were previously decided by the court. Where there has been a final judgment on the merits in a prior suit; an identity of the cause of action in both the earlier and the later suit; and an identity of parties or their privies in the two suits, res judicata is established. *See Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 248 (4th Cir. 2005) (quoting *Jones v. S.E.C.*, 115 F.3d 1173, 1178 (4th Cir. 1997)). The doctrine of res judicata precludes the assertion of a claim after a judgment on the merits in a prior suit by the same parties on the same cause of action. *See Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (citing *Harnett v. Billman*, 800 F.2d 1308, 1312 (4th Cir. 1986). In addition, "'[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id*. (quoting *Peugeot Motors of America, Inc. v. E. Auto Distrib., Inc.*, 892 F.2d 355, 359 (4th Cir. 1989).